Case No. 16-5296 Center for the Study of Services DEA Consumer's Checkbook v. United States Department of Health and Human Services L. Appellant Ms. Schoen for the Appellant Ms. Jennings for the Appellee Ms. Schoen for the Appellant Good morning. Good morning. May it please the Court, Karen Schoen on behalf of the Government. And if I may, I'd like to reserve two minutes for rebuttal. As we explained in our briefs, we're not challenging the merits of the District Court's Exemption 4 ruling. But after declaring that the Government had violated FOIA by withholding the requested benefits data after the final data submission deadline, the District Court went further and took the extraordinary step of issuing a prospective injunction that requires the Government, going forward, to release the benefits data each year immediately after the final data submission deadline. To the world? Well, to plaintiffs. But, you know, once you release it to one plaintiff, it then is released publicly. But it requires the Government to do that every year indefinitely. I don't know what the District Court meant by release. Under FOIA, it's the individual requester that's entitled to the documents, not the world. Right. So I guess we understand that it means we have to release it to the plaintiff. At a minimum. At a minimum. And the District Court offered no justification for that extraordinary relief. There was simply no basis for it. What kind of basis would it have to have? Well, this Court has made clear that only a rare instance of agency delinquency in meeting its duties under FOIA. Is that what was required in our CRU decision? That's exactly what I was quoting from CRU. And, you know, there are very few cases where this Court has even entertained the possibility of prospective injunctive relief. One of those cases was Payne. And there was clearly bad behavior on the part of the agency. Even after, on administrative appeal, the Secretary of the Air Force had said that documents can't be withheld, Air Force officers continued to withhold them. Well, in CRU, I mean, look, we have little trouble concluding a District Court possesses authority to grant a prospective injunction with an affirmative duty to disclose. And there was no finding of bad behavior by the government in that case, was there? Well, I think the Court then went on to say, on page 1246, that only a rare instance of agency delinquency in meeting its duties under FOIA will warrant a prospective injunction. Wait, at that point it was going on to talk about, that was where it was addressing why you don't have an APA, you go under FOIA and not the APA. But as to the authority of courts, the power of courts, they said you can have a prospective injunction in this case, and there was no such finding. But that rarity standard was met in that case, right? I thought the entire case was about what sort of remedy might exist, and whether you just had a remedy under FOIA or under the APA. But I may be misremembering the case, but I don't think there was any grant of a remedy in that particular case, or any finding of bad faith, or any assessment of whether there would be an appropriate remedy there, but more what sort of whether you seek relief under the APA or under FOIA. I thought that was the whole point of the case. The outcome of the case, as I understand it, was that the crew gets these disclosures. Yes? The crew, that aspect of the injunction was upheld, as long as the disclosures were to crew and not to the world, as Judge Randolph was talking about. I apologize, Your Honor, I have to go back and look at the case again. Or at least the authority to do it. But the court made very clear in sort of summing up in its opinion that it was only a rare instance of delinquency in meeting its duties. Well, it's this delinquency that you're focusing on and yet crew didn't focus on, and that's all we're getting at. And I get your argument about why you want to distinguish crew. But to the extent the district court was acting pursuant to its equitable powers, here given the public interest at stake and the need for timely release, why would this be an abuse of discretion? Well, I think once the court held that the agency had violated FOIA by relying on Exemption 4 to withhold the data, that really should have been sufficient. But, you know, we believe that holding has a preclusive effect. The agency must act in good faith and comply with that ruling. And we've so held, notably in an opinion by then-Judge Scalia back in the early 1980s, that you don't need an injunction when you have government officers in front of you because the declaratory judgment will suffice. That's exactly right, Your Honor. And so there was no reason to think that after the district court resolved that dispute about Exemption 4 that the government wouldn't then comply in future years upon receipt of future FOIA requests and release the data after the lockdown date. So the government's whole argument here, though, is, well, circumstances might change and the government ought to be able to raise other objections. And the district court's argument was the plaintiff's need is fulfilling a public interest in a critical area and time is of the essence. And the plaintiffs have come around to the government's position about when these plans are virtually final, although an insurer could still withdraw its proposal. But nevertheless, for purposes of informing the public, there would be a database that could be meaningfully used. But, again, I think there's no reason to doubt that the government wouldn't release this in a timely manner under FOIA. I mean, you know, the district court seemed to be trying to anticipate future problems and resolve future disputes before they even exist, but that's not what's done. Most of our cases involving FOIA are cases where people have asked for things under FOIA and either the agency hasn't responded in a timely manner and they've repeatedly requested and then finally they file a lawsuit and the agency starts to respond. So... But I think that's another story. And if we got to that point in this case, you know, that would be then something for the district court to consider. But they've been to that point a couple times in this case. They were not getting the information in a timely manner and exemptions were popping in and dropping out. And it wasn't until a district court ruled that they got anything on time. Well, except for the very first FOIA request, which is what prompted this litigation, all the other FOIA requests were made while the litigation was pending and before the district court actually ruled on the merits of Exemption 4. And so during the pendency of the litigation, the government continued to rely, in good faith, on its belief that Exemption 4 allowed it to withhold the data. And remember, it was only until our final summary, our renewed summary judgment motion in opposition to that, that plaintiffs narrowed their request to ask for the data after the lockdown or final data submission deadline. Up until that point, they were asking for the data at a much earlier time. And the district court acknowledged. And the district court acknowledged that. And so, you know, I think looking at what happened during the pendency of the litigation just isn't really relevant. I think the question is, once the district court resolved that Exemption 4 dispute, whether there was any basis to then take the extraordinary step and go further and issue prospective injunctive relief. Well, you're probably familiar with the case, I think it's Maddox, where we have said the government has to invoke all the exemptions on which it wishes to rely when it's before the district court. It can't come up in the Court of Appeals and invoke a new exemption. So here, the government invoked exemptions 4 and 5. And the district court ruled on 4. And the government's whole argument is it wants to be able, as these requests come in annually, to look to see whether there are other exemptions, whether there are other issues that would necessitate the government taking the position that it should not release this data at the lockdown period. I think under the circumstances they currently exist, we don't anticipate withholding the data or invoking some other exemption. But the point is that this injunction extends indefinitely into the future, and we don't know what will happen in the future. So the plaintiff told the district court and tells us that it intended to file annual requests and argues, therefore, that the district court's order should be viewed in that context so that if no request is filed, then there's nothing for the government to do. What's your response? Well, you know, when we read the district court's injunction, we didn't read it that way. We thought it basically provided automatic access, that we would have to provide it even. What I'm getting at is the district court ruled in the context of the matter that was before it. Correct? And the plaintiff had told the district court it intended to file annually. Right. And so if the court and plaintiffs are reading into that, the requirement that they file FOIA requests, I mean, we think that is helpful, but it still doesn't solve the problem in that it still requires the government indefinitely into the future to continue to release the data. And there's another point here. I mean, I have my doubts about Payne and Crewe, but there's a circuit precedent that says that you can go beyond FOIA because there's this inherent equitable power of the court. But if we're going to go down that road, then it seems to me that doctrines of equity come into play. And one doctrine that has been held by the Supreme Court over and over in our court is that the scope of the violation determines the scope of the injunction. The only thing that was violated here was invoking Exemption 4. This injunction, though, is not confined to that holding. It's no matter what. No matter what possible exemption the government could have put forward, you can't do it. You've got to automatically disclose. Now, I don't know that there's any law in our circuit that says that in a particular case when the government asserts Exemption 4 and they lose, or any exemption, and they lose, that the next time a request comes in, the government is barred from invoking any other exemption. I don't know of any case that's not what I was getting at. Yeah, I understand that. But I think that's exactly the problem that's raised by this case. So we just don't know what's going to happen. Does Res Judicata not apply? We're talking here about a request by the same party, so the exact same parties, to the litigation. And they're asking, as I read the district court's injunction, for functionally the same materials, different dates, it's a new year, but there's no substantive content differentiation. If there were, the injunction wouldn't cover it. Really, next year you could just say, well, this time we're going to try this exemption? Does Res Judicata not apply? I mean, I think, you know, as we said, under the current circumstances, we don't – I mean, we think we are precluded to withhold the data under Exemption 4. I'm not doing collateral stuff. I'm asking Res Judicata here. And so you had your shot to raise your relevant exemptions with this party. Right. I don't have to address whether it would apply to a different party filing a FOIA request. But this party raised it, asked for this material. If they come and ask for the same – functionally the same material again, there's no legally relevant difference in the content of the material. You don't believe Res Judicata applies? I mean, I think it does. I mean, there's not – So you wouldn't be able to invoke other exemptions unless the content of the material changes or the nature of the program changes or something like that. Exactly, and the nature of the review process changes. Well, but that's not what the injunction says. Well, the injunction says the requested data, and the requested data is what was requested in that order. But part of this issue is that the data sort of changes over time, right? And that was what the dispute was about, right, because the data may look different when it's first received from the issuers. There's back and forth. They may change their plans, correct errors. There's a lot of back and forth, right, until we get to the final data submission deadline, after which there are very few changes that can continue to be made until we get to open enrollment. Well, then now this sounds like the government actually wants to be able to litigate other things next year and the year after and keep fighting these things. That's not our anticipation, and right now we don't anticipate that there would be other exemptions that would apply. But the point is that this isn't just one year, two years, three years into the future. This is indefinitely, and it puts an inappropriate burden on the government to go back to court under a risk of contempt to modify the injunction should circumstances change. And remember, these are benefit plans. Do you have an affirmative duty at this point to disclose this information under a reading room provision anyhow? I don't think so, Your Honor. I'm not sure what provision would mandate that. D, copies of all records, regardless of form or format, that have been released to any person under Paragraph 3, and that because of the nature of the subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantial disdain records, or that have been requested three or more times. Right, and we don't think that applies because it's not – remember, we don't view it as a category of data, but each year's data. So if, I guess, three or more times, if there were three different plaintiffs or we thought there would be three different parties seeking 2018 data. Released any time and has been requested three or more times. It doesn't say by a different party, and it doesn't have to be the same data. But I think it has to be the same records. Substantially the same records. Substantially the same, but I think – It's all the insurance plans that are going to be offered during this open season. Right, and those are all on the healthcare.gov website, the Federal Exchange. So come open enrollment, which I think was November 1st. No, no, counsel, you know where I'm going, and that's not where I'm going. I apologize, Your Honor. They want the information early enough so they can put out information for the public to help them understand these plans, which are complex, and all of us struggle to figure out what's covered, what's not covered, how much it's going to cost, not cost, et cetera. And that's what this plaintiff is all about, public information, public education. So they need to get the data when it's virtually final, unless an insurance company decides to withdraw the plan, in time for them to have a moment to look at it, put out this educational material. This window, not getting the information until then, virtually defeats their purpose. I'm sorry, when you say the window, I mean right now – Open enrollment, period. Right, in between the final – When I'm trying to figure out what plan I want to sign up for, they want to help me make that decision. Right, and we're not disputing their entitlement to it. And under the declarative part of the district court's order, where it said that the government had previously violated FOIA by withholding the data after the lockdown date or final data submission deadline, under that we think that means that the agency will have to abide by that and release the data after this final data submission deadline going forward. And we did that just this past year. The final data submission deadline was the 16th or the 17th, and we released the data a few days later, early the following week. And we anticipate that the agency has to act in good faith. You keep saying we anticipate, and then when we push on it, your whole argument is, though, is that we actually think there's other things that are going to come up and it's going to change and all of this. So I'm trying to pin you down on one. When you say we anticipate that we'll keep doing the same thing, I assume you mean unless the law changes or the content of these materials changes in some substantively relevant way. Is that what you mean? Or until the nature of the agency's application and review process changes. Right now there are very few changes that insurers can make after this final data submission deadline. Well, that would be the law changing. I mean, the law or regulations. I'm sorry, yes, exactly. Law or regulations, okay. And we just don't know. I mean, we don't know. Nothing may change. But if those change, then it's materially different information is what you would say between these things. And so if we read the district court decision as not applying, if either the legal regime, including regulatory processes, or the content of materials changes in a legally relevant way, then do you have any problem with the order at that point? I mean, I think then it would really render a perspective injunction. I'm not sure what the point of a perspective injunction is. I mean, I think that. If you have to disclose it under the reading room provision anyhow, then what's the problem? Well, I guess we don't think we need to disclose it under the reading room provision. But I think that the sort of what I'll call the declaration part of the district court's order, where it just held that we had previously violated FOIA, I think that's sufficient. That's all the district court needed to do. And there's just no basis for going forward and issuing a perspective injunction. That's just not done in FOIA, and there's no basis for doing it here. I think that's a very. . . Before you sit down, the procedure that requires a submission by May and then a review and then amendments and then so-called lockdown and then enlisting, is that by regulation or is that just by a series of letters? It's, I guess, sub-regulatory guidance. The agency issues a letter to the insurers each year describing the process and what they need to do, setting forth the dates. It's not. . . There's not formal regulations. It's not by the statute? No, Your Honor. And it's not by. . . So far as I could tell, I couldn't find any regulations dealing with it. All I found is a series of letters. I mean, that's pretty fluid, it seems to me, particularly when you have a new administration trying to come to grips with the process. That's exactly right, Your Honor. Just one technical thing. Why, if you were concerned about how the district court articulated its order, why didn't you file a Rule 59 motion to get clarification from the district court first? Wouldn't that have been helpful? It might have been. I don't know the answer to that, Your Honor. I know the immediate concern was seeking a stay, pending appeal, and obviously the government was trying to figure out what it was going to do going forward. I don't know. I can't give you any insight into why we didn't ask for it. Judge Kessler did issue a stay, didn't she? She did issue a stay pending appeal, yes. Anything further? No. All right. Thank you. Good morning. Good morning, Your Honors. May it please the Court. I'd like to start by touching on a point that I believe Judge Rogers raised, which is that this case really boils down to timing. The annual window in which the data that Checkbook has been requesting is finalized, and the time period by which Checkbook would need to receive that data in order to be able to use it to inform the public is extremely short, and we have emphasized that from the outset of this litigation. So the timing and the need to get the data within a discrete period of time precludes us from re-litigating this every year. And I think without some prospective relief, we believe we would have essentially no relief at all. What finding did Judge Kessler make that in any way suggested or indicated that once the Exemption 4 decision came down, the government, which involved timing, would not comply? Well, the government had stated to Judge Kessler that it intended to impose the same policy going forward. In fact, when we briefed this before Judge Kessler, the summary judgment motions that were filed were filed. I'm talking about after Judge Kessler ruled that they couldn't use Exemption 4 to withhold data after the lockdown date. What finding did Judge Kessler make that the government would not comply with that and, therefore, an injunction was necessary? She referred back to the government's statement that they intended to continue to invoke the exemption going forward because that is what the government had told her. After the ruling? The government never suggested what it would do after the ruling. That was not something... But the purpose of an injunction is to ensure compliance. And at least the case law in our circuit says that a declaratory judgment when you have government officers in front of you ensures compliance. Now, if you're going to start issuing prospective injunctions, it seems to me that one of the questions is, what evidence is there of recalcitrance with the government refusing to obey a declaratory judgment? And, number one, I don't know of any such evidence in this case. And, number two, Judge Kessler made no such finding. Your Honor, I think, first, although government officials are presumed to comply with the law, the government never suggested here what it intended to do after relief was entered. And it never suggested that it would comply timely with the need to disclose the data. And, in fact, even before this court, the assurances that the government has made in its briefs do not assure that they will comply timely. They merely assert that they will not attempt to invoke the same arguments that the district court rejected under Exemption 4. But, as you said, the whole essence of the case was timely. The government never maintained that it didn't have to disclose the data. The only question was when. Correct, Your Honor. And that's why we felt that, and I think why Judge Kessler concluded, that an injunction was necessary to ensure that they disclosed it at the appropriate time. We don't know why Judge Kessler so concluded, because she made no findings and there's no discussion of the need for that kind of a relief. I think that it was in the context of the case and the record. And she had made a number of statements during status conferences where she had said she was very concerned about the need to get this information out to the public in a timely fashion and that she wanted to be sure that the public had access to the data. She also referred back to her first summary judgment opinion in which she had discussed the very compressed time period and the fact that if Checkbook had to relitigate this every year, it would really not have a remedy, Your Honor. But that assumes the government won't comply with her decision. Yes, Your Honor. And the government hasn't appealed that. So I come back to the same question. What evidence is there? What finding is there that the government wouldn't comply? And there's none. Your Honor, I would say that the standard is we would put it forth that the standard is not that the government will not comply. It's is there some reasonable likelihood of a recurring situation? And she can look at several factors to determine that. What do you mean by recurring situation? Do you mean recurring situation in that you'll ask for the information again and they'll have to make a decision, or you'll ask and they won't make a timely decision? That they won't make a timely decision, Your Honor. That there's some recurring risk of us not being able to get relief again. And what's the factual basis for that recurring risk of untimely action by the government? If I understand Your Honor's question, the factual basis from the record. What factual basis did the district court have to conclude that the government would not act timely once the district court explained the rules of FOIA to it? Yes, Your Honor. The government had steadfastly delayed disclosure each year under Exemption 4. Well, that's because they had, at that point, they thought they had a legal right not to disclose it. So that's what parties tend to do while they're still litigating things. They did, although in response to our first request, they delayed release of the data by eight months and never invoked any exemption. There was just a long delay before we got the first round of data without any exemption being invoked. More than that, I think we had attempted throughout the litigation to come to agreement with the government on some earlier date, later than we wanted it, before they wanted to give it. The government was never willing to compromise on that. Because they thought the law required, or not required, but authorized withholding and that there were policy reasons within this program to withhold it. The argument you're making sounds to me like one that's going to exist in every FOIA case, that the government didn't turn it over, didn't turn it over when we wanted it, until the court resolved the dispute about what the law requires. But if that were true, then every case would be grounds for a prospective injunction, would it not? I think there are several distinctions for this case. First, Your Honor, this is a case in which the government has consistently conceded that checkbook is entitled to expedited processing under the law. So there's no dispute that there's an urgency to inform the public. The government has conceded that. Two, I'm not aware of any other situation, and the government hasn't put forth any other situation where there's such a time-limited period in which the government releases the information and we can use it, or the requester can use it. And third, this was something that we had litigated for three years before the disreport. The government very strenuously invoked Exemption 4, although it now abandons that argument on appeal, which I think sort of raises questions about why it so long held that position. But a plaintiff couldn't just come in, I think, at the outset and request this sort of relief. So I think several factors distinguish it. Do you interpret the district court's order as requiring you to make a FOIA request each year? Your Honor, we think that's the most reasonable reading of the court's order. First, the court stated that the government has to request the requested records, which suggests there has to be a request. She also stated in her opinion that we would be requesting the records every year. Do you think the reading room provision applies to this information? Your Honor, I'm not certain about that. I'm not prepared to answer that here. I think I'd like to touch on the government's assurances before the court in terms of whether or not they will be complying going forward. We do have concerns about the assurances they've made. First of all, I think Payne suggests that this court would require something more than statements in a brief. In Payne, for example, the court considered whether the government was likely to resume a practice that it had had in the past, and the government submitted affidavits from agency employees, which the court here found insufficient, even with affidavits, that they weren't from the correct employees, they didn't address the supervisors. So we have some concern about that. Also, the assurances the government has made do not address timing, which again is really the central issue here. They also state that they leave open the possibility that they could invoke Exemption 4 again, but on other grounds. They leave open the possibility they could invoke other exemptions, and we think that if there is some change in circumstances, change in facts, change in the law, the appropriate remedy at this point would be for the government to move for a modification or clarification of the order. So we think that can be easily addressed. Just to be clear, I assume you have already made a request. You already got 2017, and you do have a pending request for 2018? Your Honor, apologies, we filed a request in early August, and the government has released that data. For 2017? For 2018. Your FOIA requests, at least up in, I guess, 2016, it wasn't just a request for the material, it was a request for the material at a particular time, right? Yes, Your Honor. Right. And the government, in its reply brief, says that we will comply if you make similar requests. So that statement, that representation to the court, does, in fact, include the timing question, because your requests were on the basis that we want the information at a particular time. Your Honor, I don't read the government's assurances in that way. The government repeatedly says it would not seek to withhold the data on the grounds of the same arguments that the district court rejected. In a case such as this, where the plaintiff may make substantially similar requests in the future, this is the government's representation, the district court's adjudication ensures that the government will not rely on the theory rejected, and the exemption for ruling has preclusive effect. I don't know how to read that any other way. Your Honor, I believe that they've said they wouldn't rely on the arguments rejected. So, for example, the government has not conceded before this court that the district court rejected its exemption for public benefit wrong argument. Well, they said it's got preclusive effect. I don't know what doctrine, it's been a while since I had federal courts, but I don't know what doctrine of preclusion it would be that would just preclude the same arguments as opposed to the claim. I don't think the government makes that clear, Your Honor. I think that is a question for the government. What do they mean exactly by that? What else would preclusive effect mean? I mean, that's a legal term of art. Yes. I don't think it's clear exactly what the preclusive effect would be and if they would be able to raise new arguments. But they certainly have tried to leave open that possibility, I think, in their assurances. And they don't state that they would request or release the information after any particular time or within any particular time. I think it's also important to note that the government never contested the district court's ability to, or authority to enter prospective relief when this was being briefed before the district court. The government suggests that all we needed to do was obtain a ruling on our underlying FOIA request and that that should have been sufficient. But the whole problem with this litigation was that each time we got to the point of getting ready to brief summary judgment, our FOIA request had been fulfilled. So their summary judgment motion has Roman numeral 3, prospective relief covering future plan years is inappropriate in this case. So how is that not raising the argument? Your Honor, the government argued that we were not entitled to the relief. It never argued that the relief was unavailable. And it made sort of a passing point. Boy, that sure looks... I'm looking at 41 to 42 of their summary judgment papers and they're talking about pain and the rules on when you can have prospective relief or not. So I just don't understand this argument. Maybe I'm just not reading it carefully enough, but that sure looks to me like they're raising the same argument they're raising here. Your Honor, I think they argued that we did not suffer a sufficient continuing injury to qualify for relief under pain. I do think they raised that argument. But their opening brief before this court focused solely on whether injunctive relief was available at all, whether the district court had any authority to grant that. And I think it's clear that the district court does. But what's more is that I think the whole posture of the case when summary judgment was briefed was to resolve the prospective issue because we did not have a FOIA request pending at that time. So the court could not have ruled on our prior FOIA requests. It did not have authority to rule on our prior FOIA requests. So the whole point of briefing this, and this was a briefing schedule that the parties jointly proposed, knowing that the data would have been requested by then, was to resolve that prospective issue. And the government, in its motion for summary judgment, repeatedly refers to its practice of withholding this data each year. So the government seemed to be asking the court to resolve the question of its prospective ability to do this. So we think the government has been on notice that the district court was going to consider that and that many of these issues should have been raised earlier. Have you, just to be clear, your presentation to the district court about what you plan to request in the years going forward, were you specific to the district court that you didn't want anything other than the functionally identical data each year, that you don't expect any change to the scope of your request? Yes, Your Honor. Because if their letters change and their process changes, your requests are going to look exactly the same. Your Honor, we consistently said that we intended to request substantially the same information, the benefits offered by the plans and nothing more. All right. Anything further? Thank you. Thank you. I'd just like to emphasize one quick point. I mean, I think plaintiff seems to still be concerned about the government's compliance in the future, but there's no basis, as you point out, there's no basis in the record and the district court... What assurance can you give us standing here, not only as to your intention not to invoke exemptions unless something changes, and specifically as to the timeliness with which future releases, responses to their FOIA requests would occur, absent material change in circumstances? I'm sorry. What assurance can you give us that absent a material change in the nature of their request or the nature of the program or the nature of the information, absent that, assuming everything looks the same, the dates just change, that the government will neither invoke new exemptions nor delay in responding to a FOIA request that they file, given their timeliness concerns? Well, I think, you know, we understand the district court's ruling regarding exemption 4 to have preclusive effect, and I think the government is presumed to comply with that sort of order. There's no reason to think that the government wouldn't, and, you know, I mean, absent some basis for thinking that the government wouldn't, we don't generally ask this question, right? I mean, I think until there's some demonstrated need, right? Right now, there's no problem, right? We just produced the data this past year, a few weeks ago. There's no basis. Well, that's for pending litigation and appeal and that kind of stuff. So let's, I'm very serious. If they say this is all about timeliness, at the end of the day, I'm not sure why this can't be worked out between the two of you, if you agree that absent material change, and maybe there'll be a fight about material changes in a new case, but absent that, and we can assume the government will act in good faith in that regard, that the response, you won't invoke exemptions, which you seem to be suggesting, and that you will respond in a timely manner, given their timeliness concerns, i.e., that you'll respond to a FOIA request and disclose materials right after the lockdown date. Right. As I said, I mean, I think the agency does have to act in good faith and comply with the order. Well, you're trying to overturn that order. I'm sorry. Comply with the portion of the order that held that Exemption 4 was not available. As to the arguments. Yes. No, but that's as to the exemptions. What about as to the timing? That's what the district will seem to be concerned with. Again, there's no basis for thinking that the government's not going to timely comply. I mean, I think if in the future the government starts unduly delaying, then that's a very different story. I guess just the reality, I mean, the problem is that the government, I don't know how often I've ever seen the government actually meet, say, a statutory deadline for complying with a FOIA request, because I get lots of them, but there's. But the idea is that if, you know, the district court to say that no matter what other demands are on the agency in future years, that these plaintiffs automatically go to the front of the line, regardless of what the situation is. I mean, I think that's a very short answer. So you're saying you're actually, so you can't make any promises about the timeliness of disclosure going forward? I can't make promises well into the future. I mean, this extends indefinitely into the future. What about next year? You don't have any statement that you can represent to this court, can you? I don't know that I'm authorized to make a formal representation. The arguments you made are those in your brief. I apologize, Your Honor, I didn't hear what you said. Basically, you're telling us that the arguments you made in your brief you stand by them, period. Yes, Your Honor. All right. And that's as far as you can go. I think that's right. All right. Anything further? All right. Thank you. Thank you. We take the case under advisement.
judges: Rogers, Millett, Randolph